UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

TROY JONES,

      Petitioner,

vs.                                  Case No.  3:22-cv-609-BJD-SJH
                                               3:17-cr-243-BJD-SJH

UNITED STATES OF AMERICA,

      Respondent.

_____

# ORDER

## I. INTRODUCTION

Petitioner, Troy Jones, a federal inmate, is proceeding *pro se* on a Motion

to Vacate, Set Aside, or Correct Sentence Under 28 U.S.C. § 2255 (Civ. Doc. 1,

Crim. Doc. 108; Pet. Mot.).[1] The Government opposes the Motion (Civ. Doc. 7;

Gov't Resp.). Petitioner filed a Reply (Civ. Doc. 10; Pet. Reply).

Under § 2255 and Rule 8(a) of the Rules Governing § 2255 Proceedings,[2]

---

[1] Citations to the record in the civil case will be denoted, "Civ. Doc.," and citations to the record in the criminal case will be denoted, "Crim. Doc." Page numbers are those assigned by the Court's electronic case management system.

[2] Rule 8(a) of the Rules Governing § 2255 Proceedings expressly requires the Court to review the record, including any transcripts and submitted materials to determine whether an evidentiary hearing is warranted before resolving a § 2255 motion.

and in accordance with Petitioner's request, *see* Pet. Mot. at 12, the Court has considered the need for an evidentiary hearing and determines that a hearing is unnecessary. *See Rosin v. United States*, 786 F.3d 873, 877 (11th Cir. 2015) ("The district court is not required to grant a petitioner an evidentiary hearing if the § 2255 motion 'and the files and records of the case conclusively show that the prisoner is entitled to no relief.'"). *See also Tejada v. Dugger*, 941 F.2d 1551, 1559 (11th Cir. 1991) (holding that a § 2255 movant is not entitled to a hearing "when his claims are merely conclusory allegations unsupported by specifics or contentions that in the face of the record are wholly incredible"). Thus, the Motion is ripe for review.

## II. BACKGROUND

On December 7, 2017, a grand jury returned a six-count Indictment charging Petitioner with, among other crimes, violating 21 U.S.C. §§ 841(a)(1) and (b)(1)(C) and 18 U.S.C. § 2 by aiding and abetting the distribution of fentanyl, which caused the death of the person who purchased the drugs from an intermediary "drug dealer" whom Petitioner supplied. *See* Crim. Doc. 1 at 2, 7; Gov't Resp. at 1. With the assistance of retained counsel and pursuant to a written plea agreement, Petitioner entered a guilty plea on October 1, 2019, before the assigned Magistrate Judge. *See* Crim. Docs. 63–65.[3]

---

[3] Petitioner consented to the Magistrate Judge's authority to conduct the proceedings required by Rule 11 of the Federal Rules of Criminal Procedure. *See*

Following the plea hearing, the Magistrate Judge issued a Report and Recommendation, noting Petitioner was cautioned and examined under oath "concerning each of the subjects mentioned in Rule 11" and finding Petitioner's guilty plea "was knowledgeable and voluntary, and that the offense charged [was] supported by an independent basis in fact containing each of the essential elements of [the] offense." *See* Crim. Doc. 66. As such, the Magistrate Judge recommended that Petitioner's "plea of guilty be accepted and that [he] be adjudged guilty." *Id.*

The undersigned adopted the Report and Recommendation and accepted Petitioner's guilty plea. *See* Crim. Doc. 68. The Court sentenced Petitioner to serve a statutory minimum mandatory prison term of 240 months. *See* Crim. Doc. 103 at 2; Crim. Doc. 110 at 6. When Petitioner did not seek an appeal within the time prescribed, the Court *sua sponte* ordered Petitioner to file a "written declaration that the decision not to file a notice of appeal was his informed and voluntary choice," or, if not, to so advise the Court in a written statement. *See* Crim. Doc. 105. Petitioner did not respond to the Order.[4] Petitioner's failure to respond was "deemed by the Court to be an

---

Crim. Doc. 64. The Government dismissed the other counts charged in the Indictment in accordance with the plea agreement. *See* Crim. Doc. 65 at 3; Crim. Doc. 103 at 1.

[4] It is unclear whether Petitioner received a copy of the Order. A Deputy United States Marshal was to personally deliver it to him and execute a return demonstrating as much. *See* Crim. Doc. 105 at 3. No executed return was docketed.

acknowledgment by [him] that the decision not to pursue an appeal was his informed and voluntary choice." *Id.*

### III. STANDARD OF REVIEW

Under Title 28, United States Code, § 2255, a person in federal custody may move to vacate, set aside, or correct his sentence on one of four grounds: (1) the sentence was imposed in violation of the Constitution or laws of the United States; (2) the court lacked jurisdiction to impose the sentence; (3) the imposed sentence exceeded the maximum authorized by law; or (4) the imposed sentence is otherwise subject to collateral attack. 28 U.S.C. § 2255(a). Only jurisdictional claims, constitutional claims, and claims of error that are so fundamentally defective as to cause a complete miscarriage of justice will warrant relief through collateral attack. *United States v. Addonizio*, 442 U.S. 178, 184–86 (1979). The movant "bears the burden to prove the claims in his § 2255 motion." *Rivers v. United States*, 777 F.3d 1306, 1316 (11th Cir. 2015). *See also Beeman v. United States*, 871 F.3d 1215, 1221 (11th Cir. 2017).

"It is well settled that a voluntary and intelligent plea of guilty made by an accused person, who has been advised by competent counsel, may not be collaterally attacked." *Bousley v. United States*, 523 U.S. 614, 621 (1998) (quoting *Mabry v. Johnson*, 467 U.S. 504, 508 (1984)). A petitioner may collaterally challenge "the voluntariness and intelligence of a guilty plea" but

only if he first advanced such an argument on direct appeal. *Id.* "Habeas review is an extraordinary remedy and 'will not be allowed to do service for an appeal.'" *Id.* (quoting *Reed v. Farley*, 512 U.S. 339, 354 (1994)).

"[A] defendant generally must advance an available challenge to a criminal conviction or sentence on direct appeal or else the defendant is barred from presenting that claim in a § 2255 proceeding." *Lynn v. United States*, 365 F.3d 1225, 1234–35 (11th Cir. 2004). "This rule generally applies to all claims, including constitutional claims." *Id.* However, the Supreme Court has held that the procedural default rule does not apply to ineffective assistance of counsel claims. *See Massaro v. United States*, 538 U.S. 500, 504 (2003) ("[A]n ineffective-assistance-of-counsel claim may be brought in a collateral proceeding under § 2255, whether or not the petitioner could have raised the claim on direct appeal.").

To avoid a procedural bar, a petitioner "must show cause for not raising the claim of error on direct appeal *and* actual prejudice from the alleged error," or he must demonstrate he "is actually innocent." *Id.* (citing *Bousley*, 523 U.S. at 622). The ineffective assistance of counsel may satisfy the "cause" prong of the first exception, but the claim must be a valid one. *Fortenberry v. Haley*, 297 F.3d 1213, 1222 (11th Cir. 2002) ("A petitioner can establish cause by showing that a procedural default was caused by constitutionally ineffective assistance

of counsel . . . ."). Under the second exception—actual innocence—a petitioner must demonstrate his factual innocence and "show that it is more likely than not that no reasonable juror would have convicted him." *Id.* (quoting *Schlup v. Delo*, 513 U.S. 298, 327 (1995)).

The United States Constitution provides criminal defendants the right to the effective assistance of counsel. *See* U.S. Const., amend. VI. As such, a claim that a criminal defendant has received the ineffective assistance of counsel in violation of the Sixth Amendment may properly be brought in a collateral proceeding under § 2255. *Massaro*, 538 U.S. at 504. To establish the ineffective assistance of counsel, a petitioner must satisfy two prongs: (1) that his counsel's conduct amounted to constitutionally deficient performance; and (2) that counsel's deficient performance prejudiced his defense. *Strickland v. Washington*, 466 U.S. 668, 687 (1984); *Martin v. United States*, 949 F.3d 662, 667 (11th Cir. 2020).

In assessing the "performance" prong, courts adhere to the standard of reasonably effective assistance. *Weeks v. Jones*, 26 F.3d 1030, 1036 (11th Cir. 1994) (citing *Strickland*, 466 U.S. at 688). Under this standard, a review of counsel's performance is highly deferential. *Chandler v. United States*, 218 F.3d 1305, 1314 (11th Cir. 2000).

> The test has nothing to do with what the best lawyers would have done. Nor is the test even what most good lawyers would have

done. We ask only whether some reasonable lawyer at the trial
could have acted, in the circumstances, as defense counsel acted at
trial…. We are not interested in grading lawyers' performances;
we are interested in whether the adversarial process at trial, in
fact, worked adequately.

*Waters v. Thomas*, 46 F.3d 1506, 1512 (11th Cir. 1995) (quoting *White v.
Singletary*, 972 F.2d 1218, 1220–21 (11th Cir. 1992)). To establish his attorney
was deficient under the highly deferential *Strickland* standard, a petitioner
must show that, given all the circumstances, counsel's performance fell
"outside the wide range of professionally competent assistance." *Scott v. United
States*, 890 F.3d 1239, 1258 (11th Cir. 2018) (quoting *Payne v. Allen*, 539 F.3d
1297, 1315 (11th Cir. 2008)).

To satisfy the "prejudice" prong, a petitioner must show a reasonable
probability that, but for counsel's error, the result of the proceeding would have
been different. *Martin*, 949 F.3d at 667 (citing *Padilla v. Kentucky*, 559 U.S.
356, 366 (2010)). A reasonable probability is one sufficient to undermine
confidence in the outcome. *Strickland*, 466 U.S. at 694. "It is not enough for
the [petitioner] to show that the error had some conceivable effect on the
outcome of the proceeding." *United States v. Phillips*, 853 F. App'x 623, 626
(11th Cir. 2021) (citing *Strickland*, 466 U.S. at 693).

There is no "iron-clad rule requiring a court to tackle one prong of the
*Strickland* test before the other." *Ward v. Hall*, 592 F.3d 1144, 1163 (11th Cir.

2010). Since both prongs of the two-part *Strickland* test must be satisfied to show a Sixth Amendment violation, "a court need not address the performance prong if the petitioner cannot meet the prejudice prong, and vice-versa." *Id.* (citing *Holladay v. Haley*, 209 F.3d 1243, 1248 (11th Cir. 2000)). As stated in *Strickland*, "If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, which we expect will often be so, that course should be followed." 466 U.S. at 697.

The two-part *Strickland* test applies to challenges to the validity of guilty pleas based on ineffective assistance of counsel. *Hill v. Lockhart*, 474 U.S. 52, 58 (1985). The petitioner must still show that counsel's performance was deficient. *See id.* at 56–59; *Lynch v. Sec'y Fla. Dept. of Corr.*, 776 F.3d 1209, 1218 (11th Cir. 2015). To establish prejudice, however, the petitioner "must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Hill*, 474 U.S. at 59 (footnote omitted); *Lynch*, 776 F.3d at 1218.

## IV. DISCUSSION

Petitioner asserts his retained counsel was ineffective for not fully or properly advising him about the Government's burden to obtain a conviction under 21 U.S.C. § 841(b)(1)(C) or the maximum sentence he could receive if

convicted.[5] *See* Pet. Mot. at 4. In a supporting affidavit (Civ. Doc. 1-1; Crim. Doc. 108-1; Pet. Aff.), Petitioner avers that his attorney, who spoke with him "only three times," did not discuss with him (1) his "exposure to a harsher sentencing penalty enhancement [under] 21 U.S.C. § 841(b)(1)(C)"; (2) the Government's burden to establish a penalty enhancement under the "but-for causation" analysis set forth in the *Burrage* case; or (3) the factual basis of the plea agreement. *See* Pet. Aff. ¶¶ 10, 14–18. Due to these alleged failures, Petitioner concludes, his plea was not knowing, voluntary, or intelligent. *Id.* ¶¶ 13, 19.

The Government does not dispute that Petitioner exhausted his claim but argues the claim is meritless. *See* Gov't Resp. at 7. Liberally construing Petitioner's *pro se* Motion, he appears to raise two claims: one that he received the ineffective assistance of counsel with respect to his decision to enter a plea; and one stand-alone claim that his plea was involuntary. The first claim is not procedurally barred for Petitioner's failure to appeal, *see Massaro*, 538 U.S. at 504, but the second is, unless Petitioner can demonstrate cause and prejudice

---

[5] Under 21 U.S.C. § 841(b)(1)(C), when "death . . . results from the use of [a schedule I or II] substance," which includes fentanyl, the person convicted of distributing or dispensing the controlled substance "shall be sentenced to a term of imprisonment of not less than twenty years . . . ." The "death results" element must be proven beyond a reasonable doubt because it increases the minimum mandatory sentence. *See Burrage v. United States*, 571 U.S. 204, 210 (2014). The phrase "results from" has been defined as requiring "but-for causality." *Id.* at 212, 218–19.

or that he is actually innocent, *see Bousley*, 523 U.S. at 621.

### A. Ineffective Assistance of Counsel

Petitioner argues his counsel was ineffective for failing to properly advise him of the law, including the Government's burden of proof to obtain a sentencing enhancement under 21 U.S.C. § 841(b)(1)(C). *See* Pet. Mot. at 4; Pet. Reply at 1–2, 4. According to Petitioner, his attorney "verbally coerced and misguided [him] into pleading guilty" by telling him that "if he did not plead guilty[,] he would receive a life sentence." *See* Pet. Reply at 1. Petitioner claims, "had he known that he could not receive a mandatory life term, he would never have pled guilty, but would have proceeded to trial and been acquitted because he did not cause the death [of the victim]" on the theory that the drug dealer he supplied could have "tampered with [the substance]." *Id.* at 2.

Finding Petitioner waived the attorney-client privilege related to the claims raised in his Motion, the Court granted the Government leave to file with its Response relevant communications between Petitioner and his attorney. *See* Civ. Doc. 4. As such, with its Response, the Government offers an affidavit and supporting documentation from one of Petitioner's two trial attorneys (Doc. 7-1; Gov't Ex.). Counsel avers that Petitioner indeed "faced a possible mandatory life sentence," and counsel explained to Petitioner both orally and in writing the nature of the charges, the facts the Government was

10

prepared to prove in support of the charges, and the maximum sentence Petitioner could have received if convicted as charged. *See* Gov't Ex. at 4–5. Counsel avers that he "strongly advise[d] [Petitioner] to accept the plea agreement." *Id.* at 6. In a letter counsel sent to Petitioner on October 15, 2018, he explained:

> Your current indictment carries only a minimum mandatory twenty year sentence, but [the Assistant United States Attorney] told me today that if you do not plead guilty to that charge – the 20 year minimum mandatory charge – that she would file an information pursuant to 21 U.S.C. § 851, based on one or both of your two prior drug convictions, and once she does that, then any conviction under the death resulting count would then result in a **mandatory life sentence**. This is what she intends to do unless you agree to plead guilty to the minimum mandatory twenty year count.
>
> . . . .
>
> I will do a more thorough analysis of the indictment and the law relating to the death resulting charges [sic], **but as of now, it is my best judgment that you should plead guilty to the death resulting charge which will mean your minimum sentence will be twenty years in prison**. [The Assistant United States Attorney] advised that she would not argue for any sentence in excess of the twenty years. If you do not do this, she will file the § 851 information which will trigger a mandatory life sentence if convicted of the death resulting charge.

*Id.* at 8, 9.

Counsel followed through on his promise to do more research on the death resulting charge and sent a copy of the *Burrage* case to Petitioner on January 16, 2019. *Id.* at 11. In light of the *Burrage* decision, which counsel

11

explained to Petitioner "set the standard of proof for death resulting in a drug prosecution," counsel recommended to Petitioner that he "retain a medical expert/pharmacologist to look at . . . whether the evidence meets the standard set by the [C]ourt . . . ." *Id.* Counsel wrote to Petitioner again on August 22, 2019, updating him on the status of plea negotiations with the Government, as follows:

> [The Government's] position is to either plead guilty to . . . the death resulting count which carries a 20 year minimum mandatory up to life imprisonment . . . or go to trial, and if we go to trial [the Government's attorney] will file a notice of your prior qualifying drug conviction *which would result in mandatory life if convicted.*

*Id.* at 57 (emphasis added). Counsel further explained that, even without the filing of an information charging him under 21 U.S.C. § 851, Petitioner could be facing a "sentencing range of 30 years to life" under the sentencing guidelines given his "prior felony drug conviction" was a "scoreable" offense. *Id.* Counsel reminded Petitioner that he "ha[d] a right to trial" if that was what he wanted. *Id.* at 58.

Counsel avers that he does not independently recall going over the plea agreement with Petitioner but says that doing so has been his standard practice with the hundreds of clients he has represented in federal court since 1989. *Id.* at 2, 5. Counsel explains that he mailed a copy of the plea agreement to Petitioner on June 8, 2018, and Petitioner did not enter his plea until

October 1, 2019, which meant there would have been "plenty of time [for him and Petitioner] to go over the plea agreement[,] including the factual basis." *Id.*

Petitioner offers no evidence contradicting the Government's. *See generally* Pet. Reply. Additionally, Petitioner's initials and signature on the written plea agreement and his sworn statements made at his plea hearing contradict the assertions he now makes—that his attorney coerced him into entering a guilty plea by improperly advising him on the law. *See* Crim. Docs. 65, 109. At the plea hearing, the Magistrate Judge asked Petitioner if he had read the plea agreement before signing it, and he said he had. *See* Crim. Doc. 109 at 21. Petitioner acknowledged having initialed and signed the plea agreement. *Id.* at 20–21. He also said his attorneys "discuss[ed] it with [him]" and "answer[ed] all of [his] questions" about it. *Id.*

Before accepting Petitioner's plea, the Magistrate Judge reviewed with Petitioner the sentencing guidelines, the "essential elements" the Government would have to prove beyond a reasonable doubt on the charge to which Petitioner was pleading guilty, and specific provisions in the written plea agreement. *Id.* at 13–18, 22–26. Petitioner said that he understood "everything" the Magistrate Judge had said and reviewed with him pertaining to the plea, including the rights he was giving up by pleading guilty. *Id.* at 26.

13

Following the Government's factual proffer, the Court asked Petitioner whether he committed the acts supporting the charge to which he was pleading guilty:

> THE COURT: All right. Let me ask you these questions, and I'll be reading from the personalization of elements attached to your plea agreement, page 20. Mr. Jones, between on or about June 20th, 2017, and on or about June 21st, 2017, in the Middle District of Florida, did you distribute, cause to be distributed, and aid and abet the distribution of a controlled substance, which violation involved a mixture and substance containing a detectable amount of fentanyl, a Schedule II controlled substance, as charged in the indictment?
>
> [PETITIONER]: Yes, sir.
>
> THE COURT: Did you do so knowingly and intentionally?
>
> [PETITIONER]: Yes, sir.
>
> THE COURT: On or about June 21st, 2017, did C.A. die as a result of the use of the mixture and substance containing a detectable amount of fentanyl?
>
> [PETITIONER]: Yes, sir.
>
> THE COURT: All right. I do find a factual basis for Mr. Jones's plea of guilty and that all of the essential elements thereof have been met.

*Id.* at 31–32. Petitioner further agreed that no one had coerced him into entering a guilty plea, and his decision to enter the plea was voluntary. *Id.* at 32. Finally, Petitioner said he was satisfied with the representation of his two attorneys, who had explained everything to him to his satisfaction:

> THE COURT: . . . . Mr. Jones, you are represented, of course, here today by Mr. McFarland, and I know that you are also represented

by Mr. Kent. Have you discussed your case fully with your attorneys and explained everything you know about your case to them?

[PETITIONER]: Yes, sir.

THE COURT: Have you had enough time to talk to your attorneys or anyone else you care to about your case?

[PETITIONER]: Yes, sir.

THE COURT: Are you satisfied with the way Mr. Kent and Mr. McFarland have represented you in this case?

[PETITIONER]: Yes, sir.

THE COURT: Do you have any complaints about their representation?

[PETITIONER]: No, sir.

*Id.* at 33–34.

As demonstrated through the Government's uncontroverted evidence, Petitioner's counsel advised him about sentencing exposure and the Government's burden of proof should he have chosen to proceed to trial. Petitioner's sworn statements at the plea hearing demonstrate the same. A defendant's "representations [at a plea hearing,]. . . as well as any findings made by the judge accepting [a guilty] plea, constitute a formidable barrier in any subsequent collateral proceedings. Solemn declarations in open court carry a strong presumption of verity." *Blackledge v. Allison*, 431 U.S. 63, 74 (1977). *See also United States v. Medlock*, 12 F.3d 185, 187 (11th Cir. 1994) ("There is a strong presumption that the statements made during [a plea] colloquy are

true.").

According to Petitioner, he would have insisted on going to trial had he "known that he could not receive a mandatory life term." *See* Pet. Reply at 1–2. This "contention[] in the face of the record [is] wholly incredible." *See Blackledge*, 431 U.S. at 74. Petitioner's attorney explained to him that he could have been sentenced to life on Count II had he not pled guilty because of his prior drug convictions. That advice was not wrong. The relevant subsection of the statute under which Petitioner was convicted provides as follows:

> If any person commits . . . a violation [of subsection (a)] after a prior conviction for a felony drug offense has become final, such person shall be sentenced to a term of imprisonment of not more than 30 years and if death or serious bodily injury results from the use of such substance *shall be sentenced to life imprisonment*.

21 U.S.C. § 841(b)(1)(C) (emphasis added). As detailed in Petitioner's final Pre-Sentence Investigation Report, he had an extensive criminal history, including a conviction for a felony drug offense for which he served eight years in prison. *See* Crim. Doc. 73 at 8–14; *see also State v. Jones*, No. 16-CF-13646 (Fla. 4th Cir. Ct.). While serving his eight-year prison term, Petitioner was adjudicated guilty for introducing contraband into prison and was sentenced to a concurrent term of sixteen months. *See* Crim. Doc. 73 at 14; *see also State v. Jones*, No. 13-CF-140 (Fla. 8th Cir. Ct.). To the extent Petitioner feels wronged because his counsel—based on the evidence and the law—gave him candid

16

"advice that [he likely did not] want to hear," *see* Gov't Ex. at 9, such a complaint cannot sustain an ineffective assistance of counsel claim. For the reasons stated, Petitioner fails to demonstrate his counsel was ineffective in connection with advising him to accept the plea agreement, and his claim is denied.

### B. Voluntariness of Plea & Procedural Default

To the extent Petitioner raises a stand-alone claim that his guilty plea was unknowing and involuntary, he did not raise such a claim on direct appeal. As such, the claim is procedurally defaulted unless he can demonstrate cause and prejudice for the procedural default or his actual innocence. Petitioner does not argue actual innocence. *See* Pet. Reply at 3. And Petitioner's statements made under oath at the plea hearing demonstrate he was not wrongly accused of the crime to which he pled guilty. *See Sawyer v. Whitely*, 505 U.S. 333, 340 (1992) ("A prototypical example of 'actual innocence' in a colloquial sense is the case where the [government] has convicted the wrong person of the crime."). At the plea hearing, Petitioner testified that he was "pleading guilty because [he was] guilty," and he "admit[ted] that [he] committed the acts set forth in [Count II of the Indictment]." *See* Crim. Doc. 109 at 26–27. Petitioner does not offer or point to any "new reliable evidence" showing it "is more likely than not that no reasonable juror would have found [him] guilty beyond a reasonable

doubt." *See Schlup*, 513 U.S at 324, 327, 329.

Petitioner appears to invoke the "cause and prejudice" exception to the procedural default rule by claiming that his counsel was "ineffective for not pursuing [his] claim through the appeal stages upon [his] request." *See* Pet. Reply at 3. Petitioner says counsel refused to file a notice of appeal on his behalf because he waived his right to appeal by virtue of pleading guilty. *Id*. A petitioner may demonstrate "cause" under the procedural default rule if he demonstrates his failure was attributable to the ineffective assistance of counsel, but the ineffective assistance claim "must have merit." *United States v. Nyhuis*, 211 F.3d 1340, 1344 (11th Cir. 2000).

Assuming Petitioner's counsel did not file a notice of appeal in accordance with Petitioner's request, such a failure is per se ineffective under the Sixth Amendment. *Roe v. Flores-Ortega*, 528 U.S. 470, 477 (2000) ("We have long held that a lawyer who disregards specific instructions from the defendant to file a notice of appeal acts in a manner that is professionally unreasonable."). *See also Thompson v. United States*, 504 F.3d 1203, 1206 (11th Cir. 2007) ("[A]dequate consultation requires informing a client about his right to appeal, advising the client about the advantages and disadvantages of taking an appeal, *and* making a reasonable effort to determine whether the client wishes to pursue an appeal, regardless of the merits of such an appeal.").

Although the Court explicitly advised Petitioner of his right to appeal, both at the sentencing hearing and through a written Order, *see* Crim. Doc. 110 at 23; Crim. Doc. 105 at 1–2, liberally construing the facts in Petitioner's favor, the Court accepts that his ineffective assistance of counsel claim has some merit such that he overcomes the procedural default on his claim that his guilty plea was unknowing and involuntary. However, for the reasons already explained and those that follow, the Court finds Petitioner's claim lacks merit.

As demonstrated by the written plea agreement and exhaustive plea colloquy the Magistrate Judge undertook in accordance with Rule 11, Petitioner entered a knowing and voluntary plea. *See* Crim. Docs. 65, 109. The plea agreement, which Petitioner signed and reviewed with his counsel, included the following paragraph, titled "Voluntariness":

> [Petitioner] acknowledges that [he] is entering into this agreement and is pleading guilty freely and voluntarily without reliance upon any discussions between the attorney for the government and [Petitioner] and [Petitioner's] attorney and without promise of benefit of any kind (other than the concessions contained herein), and without threats, force, intimidation, or coercion of any kind. [Petitioner] further acknowledges [his] understanding of the nature of the offense or offenses to which [he] is pleading guilty and the elements thereof, including the penalties provided by law, and [Petitioner's] complete satisfaction with the representation and advice received from [his] undersigned counsel (if any). [Petitioner] also understands that [he] has the right to plead not guilty or to persist in that plea if it has already been made, and that [Petitioner] has the right to be tried by a jury with the assistance of counsel, the right to confront and cross-examine the witnesses against [him] the right against compulsory self-

incrimination, and the right to compulsory process for the attendance of witnesses to testify in [his] defense; but, by pleading guilty, [Petitioner] waives or gives up those rights and there will be no trial. [Petitioner] further understands that if [he] pleads guilty, the Court may ask [him] questions about the offense or offenses to which [he] pleaded, and if [he] answers those questions under oath, on the record, and in the presence of counsel (if any), [his] answers may later be used against [him] in a prosecution for perjury or false statement. [Petitioner] also understands that [he] will be adjudicated guilty of the offenses to which [he] has pleaded and, if any of such offenses are felonies, may thereby be deprived of certain rights, such as the right to vote, to hold public office, to serve on a jury, or to have possession of firearms.

Crim. Doc. 65 at 16–18.

At the plea hearing, the Magistrate Judge reviewed specific provisions of the written plea agreement with Petitioner. *See* Crim. Doc. 109 at 18, 22. Petitioner said under oath that he had read the plea agreement before he signed it, discussed it with his counsel who "answer[ed] all of [his] questions, and understood it. *Id.* at 20–21. When entering his plea, Petitioner was represented by counsel and demonstrated he was educated; could read, write, and understand English; was not under the influence of intoxicants or medications that would have impacted his ability to "think clearly"; did not suffer from mental illness; and understood the proceeding and the nature of the charge to which he was pleading. *Id.* at 5–7, 9–11. Petitioner's attorney informed the Magistrate Judge that he did not "have any doubt whatsoever about [Petitioner's] competency to proceed." *Id.* at 7.

The Magistrate Judge explicitly advised Petitioner of the rights he was waiving by entering a guilty plea, including the right to a jury trial at which he would be "presumed innocent, and before [he] could be found guilty, the burden of proof [was] on the United States to prove [his] guilt by competent and sufficient evidence beyond a reasonable doubt." *Id.* at 9–10. He was informed that he was waiving his right to confront witnesses against him and to "offer evidence on [his] own behalf." *Id.* at 10. Petitioner told the Magistrate Judge his attorneys had "explained" to him all of the rights he was waiving by entering a guilty plea:

> THE COURT: . . . . If you plead guilty there will be no trial of any kind, and on your plea the Court will find you guilty and convict you. A plea of guilty admits the truth of the charge, but a plea of not guilty denies the charge.
>
> Has this been explained to you by your lawyers?
>
> [PETITIONER]: Yes, sir.

*Id.* at 11. The Magistrate Judge also asked Petitioner if his attorneys had "explained the defenses that [may] be available to [him]," and he responded, "Yes, sir." *Id.* at 12. Petitioner told the Magistrate Judge that he understood the provisions of the plea agreement reviewed during the plea hearing, including the elements of the offense and the waiver of his right to appeal the sentence imposed with enumerated exceptions. *Id.* at 23–26.

After hearing the factual basis for the guilty plea, the Magistrate Judge

engaged in the following colloquy with Petitioner:

> THE COURT: All right. I do find a factual basis for Mr. Jones's plea of guilty and that all of the essential elements thereof have been met. Mr. Jones, is your guilty plea entered here today freely and voluntarily?
>
> [PETITIONER]: Yes, sir.
>
> THE COURT: Is your plea of guilty your own independent decision?
>
> [PETITIONER]: Yes, sir.
>
> THE COURT: Has anyone threatened you, forced you, coerced you, or intimidated you in any way regarding your decision to plead guilty?
>
> [PETITIONER]: No, sir.
>
> THE COURT: Has anyone made any promises or assurances to you of any kind to induce you to plead guilty, other than those stated in your plea agreement?
>
> [PETITIONER]: No, sir.

*Id.* at 32.

Petitioner agreed that he "understood everything that [was] covered" at the plea hearing. *Id.* at 34–35. The Magistrate Judge made the following findings with respect to Petitioner's guilty plea:

> I do find that you, Troy Jones, are now alert and intelligent, that you understand the nature of the charge against you and the possible penalties, and you appreciate the consequences of pleading guilty. I also find the facts that the Government is prepared to prove and that by your plea of guilty you admit state all of the essential elements of the offense to which you have pleaded guilty. I further find that your decision to plead guilty is freely, voluntarily, knowingly, and intelligently made and that you

22

have had the advice and counsel of a competent lawyer, or competent lawyers, with whom you say you are satisfied.

*Id.* at 35–36. The Magistrate Judge asked Petitioner if he "agree[d] with these findings," and Petitioner responded, "Yes, sir." *Id.* at 36.

Petitioner's plea colloquy satisfied the requirements of Rule 11, and upon a thorough review of the record, including the written plea agreement, the plea transcript, and the Government's evidence, the Court finds that Petitioner's guilty plea was entered knowingly and voluntarily. Petitioner's sworn statements that he entered his plea freely and voluntarily are presumed to be true, and his conclusory assertions to the contrary do not entitle him to relief. *See Blackledge*, 431 U.S. at 74; *Medlock*, 12 F.3d at 187. Thus, his claim is denied.

## V. CONCLUSION

Finding Petitioner advances no argument warranting relief under 28 U.S.C. § 2255, it is hereby **ORDERED**:

1.    Petitioner's Motion (Civ. Doc. 1, Crim. Doc. 108) is **DENIED**, and this action is **DISMISSED WITH PREJUDICE**.

2.    The **Clerk** is directed to enter judgment denying the Motion and dismissing the action with prejudice, terminate any pending motions as moot, and close the file.

3.    If Petitioner appeals this Order, **the Court denies a certificate of appealability**.[6] Because this Court has determined that a certificate of appealability is not warranted, the **Clerk** shall terminate from the pending motions report any motion to proceed on appeal as a pauper that may be filed in this case. Such termination shall serve as a denial of the motion.

**DONE AND ORDERED** at Jacksonville, Florida, this 25th day of March 2025.

_____

BRIAN J. DAVIS
United States District Judge

Jax-6
c:
Troy Jones
Counsel of Record

---

[6] This Court should issue a certificate of appealability only if a petitioner makes "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). To make this substantial showing, Petitioner "must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong," *Tennard v. Dretke*, 542 U.S. 274, 282 (2004) (quoting *Slack v. McDaniel*, 529 U.S. 473, 484 (2000)), or that "the issues presented were 'adequate to deserve encouragement to proceed further,'" *Miller-El v. Cockrell*, 537 U.S. 322, 335–36 (2003) (quoting *Barefoot v. Estelle*, 463 U.S. 880, 893 n.4 (1983)). Upon due consideration, this Court will deny a certificate of appealability.